CITY OF CINCINNATI, Appellee,

v.

QUEEN CITY LODGE NO. 69, FRATERNAL ORDER OF POLICE, Appellant.

[Cite as *Cincinnati v. Queen City Lodge No. 69, Fraternal Order of Police*, 164 Ohio App.3d 408, 2005-Ohio-6225.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–050143.

Decided Nov. 23, 2005.

410

J. Rita McNeil, City Solicitor, and Gloria J. Sigman, Assistant City Solicitor; and Downes, Hurst & Fishel, Jonathan J. Downes, and Benjamin S. Albrecht, for plaintiff-appellee.

William Gustavson, for defendant-appellant.

GORMAN, Judge.

{¶ 1} Defendant-appellant, Queen City Lodge No. 69, Fraternal Order of Police ("FOP"), appeals from the order of the Hamilton County Court of Common Pleas granting the motion of plaintiff-appellee, the city of Cincinnati, to vacate an arbitrator's decision modifying the dismissal of the grievant, Police Officer Patrick Caton, to a 40–hour suspension. The FOP's single assignment of error challenges the trial court's finding that the arbitrator had exceeded her authority when she relied on the city police division's rules and regulations, a document extraneous to the collective-bargaining agreement between the parties. We hold that the arbitrator's award modifying Caton's termination drew its essence from the collective-bargaining agreement and that the trial court committed error by vacating the arbitrator's award under R.C. 2711.10(D).

{¶ 2} This case arose out of the death of Roger Owensby Jr. during his arrest by Cincinnati police officers on November 7, 2000. Summarizing from the arbitrator's decision, the arrest came about because Officer Caton and his partner, Officer Jorg, on information from Officer Hunter, suspected that Owensby had previously fled from police. They confronted Owensby outside a convenience store. During questioning, Owensby bolted and ran about six feet before Jorg tackled him. Caton assisted Jorg in trying to restrain him. As they struggled on the ground, Caton issued an "officer needs assistance" call on his radio. To avoid being handcuffed, Owensby placed his hands under his body. Caton then straddled Owensby in an attempt to secure his right arm. When he could not gain control of Owensby, Caton struck Owensby on his side and in the back with the base of the palm of his hand. Hunter sprayed Mace on Owensby. After Caton handcuffed Owensby's right wrist, he struck Owensby's right arm two or three times to bring it toward the middle of his back. Officer Hodge, who arrived on the scene with other police officers, used Caton's baton as a "pry tool" to assist in handcuffing Owensby. The officers restrained Owensby face-down on the ground with his hands handcuffed behind his back. They then lifted him to his feet and walked him to a police cruiser. Caton pulled Owensby into the back seat. As the last officer to leave the cruiser, Caton left Owensby alone in an

awkward position in the back seat, with the doors locked and the windows closed. Owensby had one leg underneath him and one leg on the floor. The time that elapsed from Caton's radio call for assistance until Owensby was placed in the cruiser was two minutes.

{¶ 3} Because police officers had used Mace on Owensby, Caton called his supervisor, Sergeant Watts, to the scene. Upon his arrival, Watts went to the cruiser to examine Owensby. He observed that Owensby "did not look natural." He was lying with his head down and his face turned to the back seat. His forehead was bruised, and he did not appear to be breathing. He had no pulse and was unresponsive. When Watts moved Owensby, blood and saliva came from his mouth. Officers removed him from the cruiser. On orders from Watts, Caton administered CPR to Owensby, but efforts to revive him were unsuccessful. Thirteen minutes elapsed from the time that Caton called for assistance until Watts ordered Owensby removed from the cruiser.

{¶ 4} The Hamilton County Coroner concluded that "the cause of Mr. Owensby's death was mechanical asphyxia and the manner of death was homicide (police intervention: asphyxiation during restraint attempts)." Caton was indicted for the crime of assault. Jorg was indicted for the crimes of involuntary manslaughter and assault. In October 2001, a jury acquitted Jorg of assault, but was unable to reach an agreement on the count of involuntary manslaughter. In November 2001, a jury acquitted Caton.

{¶ 5} Investigations were conducted by the Cincinnati Police Department's Criminal Investigations Section ("CIS") and Internal Investigations Section ("IIS") and the Office of Municipal Investigation ("OMI"). On September 24, 2002, IIS concluded that Caton had violated five rules of the Manual of Rules and Regulations and Disciplinary Process for the Cincinnati Police Division ("the Rules Manual"):

{¶ 6} "(1) A failure to provide due care to Mr. Owensby after his arrest in violation of Rule 1.01A by not rinsing Mr. Owensby's face with plenty of clear cool water or exposing him to fresh air;

{¶ 7} "(2) A failure to tend to or seek medical aid for Mr. Owensby's injuries in violation of Rule 1.01C;

{¶ 8} "(3) Leaving Mr. Owensby unattended in the patrol car in violation of Rule 1.01E;

{¶ 9} "(4) Using more force in a situation than is reasonably necessary in violation of Rule 1.23; and

{¶ 10} "(5) A failure to report a use of force in violation of Rule 1.01D by not informing Sergeant Watts of his use of force against Mr. Owensby."

{¶ 11} On October 2, 2002, OMI recommended a sixth charge against Caton under Rule 2.12, concluding that he had "failed to exercise due care and safety [precautions regarding] Mr. Owensby, even though [he] was aware that Owensby sustained injuries during his struggle with the police."

{¶ 12} On November 18, 2002, Captain Raabe conducted a predisciplinary hearing at which Caton and his attorney were present. Raabe sustained all six charges and the specifications against Caton. He recommended a 10–day/80–hour suspension and forwarded his recommendation to the chief of police. The chief of police forwarded the results of the predisciplinary hearing to the city manager. After reviewing the results of the predisciplinary hearing, the city manager conferred with the chief of police, the law director, and the human-resources director. The human-resources director testified before the arbitrator that all three had recommended Caton's dismissal on grounds of failure of good behavior and neglect of duty. In her letter of February 25, 2003, the city manager informed the chief of police that she was disapproving Raabe's recommendation and ordering Caton to be discharged "[b]ased upon the severity of all of the sustained charges, *as well as the cumulative effect of the six (6) sustained charges* and Officer Caton's prior disciplinary history."[1] (Emphasis added.) The FOP filed a grievance on behalf of Caton contesting his dismissal. Pursuant to Section 3, Article III of their collective-bargaining agreement, the parties submitted the grievance to binding arbitration.

{¶ 13} Following a two-day hearing, the arbitrator dismissed charges and specifications I, III, and IV, finding that the evidence was insufficient to sustain them. But she did sustain charges and specifications II and VI, involving a failure to provide medical care, and also sustained charge and specification V, involving a failure to report the use of force to a supervisor. The arbitrator reduced Caton's punishment from termination to a 40–hour suspension. On July 28, 2004, the city appealed the decision of the arbitrator to the common pleas court and moved to vacate the arbitrator's award. On February 17, 2005, the common pleas court, without opinion, vacated the arbitrator's award, stating in its judgment entry, "As the basis for the decision, the Court adopts * * * *City of Cincinnati v. Queen City Lodge No. 69, Fraternal Order of Police*, Case No. AO401110," which was subsequently affirmed in 1st Dist. No. C–040454, 2005-Ohio-1560, 2005 WL 736667 ("the Officer Spellen decision").

---

1. The arbitrator noted that on November 23, 1999, Caton had received a written reprimand for "Failure to Make Report" and that on June 22, 2000, he had received a written reprimand for "Unauthorized Firearms While Intoxicated" and a 24–hour suspension for driving under the influence.

### The Narrow Scope of Appellate Review of an Arbitrator's Decision

{¶ 14} "Public policy favors arbitration." *Southwest Ohio Regional Transit Auth. v. Amalgamated Transit Union, Local 627* (2001), 91 Ohio St.3d 108, 109, 742 N.E.2d 630. Arbitration provides the parties with " 'a relatively speedy and inexpensive method of conflict resolution and has the additional advantage of unburdening crowded court dockets.' " *Findlay School Dist. Bd. of Edn. v. Findlay Edn. Assn.* (1990), 49 Ohio St.3d 129, 131, 551 N.E.2d 186, quoting *Mahoning Cty. Bd. of Mental Retardation & Dev. Disabilities v. Mahoning Cty. TMR Edn. Assn.* (1986), 22 Ohio St.3d 80, 83, 22 OBR 95, 488 N.E.2d 872. " 'The whole purpose of arbitration would be undermined if courts had broad authority to vacate an arbitrator's award.' " *Southwest Ohio Regional Transit Auth.* at 109–110, 742 N.E.2d 630, quoting *Mahoning Cty. Bd. of Mental Retardation & Dev. Disabilities* at 83–84, 22 OBR 95, 488 N.E.2d 872. Therefore, a strong presumption favors the regularity and integrity of an arbitrator's award. See *Findlay City School Dist. Bd. of Edn. v. Findlay Edn. Assn.* (1990), 49 Ohio St.3d 129, 551 N.E.2d 186, paragraph one of the syllabus.

{¶ 15} When the parties have agreed in a collective-bargaining agreement to settle their disputes by using a mutually acceptable arbitrator rather than a judge, they have bargained for and agreed to accept the arbitrator's findings of fact and interpretation of the contract. A reviewing court cannot reject an arbitrator's findings of fact or interpretation of the contract simply because it disagrees with them. See *Southwest Ohio Regional Transit Auth.* at 110, 742 N.E.2d 630.

{¶ 16} "Judicial review of arbitration proceedings is extremely limited, and a court may not set aside an arbitrator's award except in the very limited circumstances set forth in R.C. 2711.10." *Princeton City School Dist. Bd. of Edn. v. Princeton Assn. of Classroom Educators* (1999), 134 Ohio App.3d 330, 332–333, 731 N.E.2d 186. Under R.C. 2711.10(D), a court may vacate an award only if "[t]he arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."

{¶ 17} In order to determine whether an arbitrator has exceeded his or her authority under R.C. 2711.10(D), the trial court must first determine whether the award draws its essence from the collective-bargaining agreement. See *Queen City Lodge No. 69, Fraternal Order of Police, Hamilton Cty., Ohio, Inc. v. Cincinnati* (1992), 63 Ohio St.3d 403, 406, 588 N.E.2d 802; see, also, *Southwest Ohio Regional Transit Auth. v. Amalgamated Transit Union, Local 627*, 91 Ohio St.3d at 110, 742 N.E.2d 630. "Once it is determined that the arbitrator's award draws its essence from the collective bargaining agreement and is not unlawful,

arbitrary or capricious, a reviewing court's inquiry for purposes of vacating an arbitrator's award pursuant to R.C. 2711.10(D) is at an end." *Findlay City School Dist. Bd. of Edn.*, 49 Ohio St.3d 129, 551 N.E.2d 186, paragraph two of the syllabus.

{¶ 18} An arbitrator's award draws its essence from the collective-bargaining agreement when there is a rational nexus between the agreement and the award. See *Internatl. Assn. of Firefighters v. Columbus* (2002), 95 Ohio St.3d 101, 102, 766 N.E.2d 139. "A mere ambiguity in the opinion accompanying an arbitration award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for vacating the award when such award draws its essence from the collective bargaining agreement." *Ohio Office of Collective Bargaining v. Ohio Civ. Serv. Emp. Assn., Local 11, AFSCME, AFL–CIO* (1991), 59 Ohio St.3d 177, 179, 572 N.E.2d 71, citing *Goodyear Tire & Rubber Co. v. Local Union No. 200* (1975), 42 Ohio St.2d 516, 71 O.O.2d 509, 330 N.E.2d 703, paragraph one of the syllabus.

### Lack of a Transcript is No Bar to Review of the Arbitrator's Authority

{¶ 19} While appellate review in this case is further restricted by the lack of a transcript of the arbitration hearings, we reject the FOP's argument that the absence of a verbatim transcript of the arbitration required the common pleas court to affirm the arbitrator's award. Under R.C. 2711.14, a transcript of an arbitration hearing is not required in a proceeding to vacate an award. In the trial court, the city did not challenge the conduct or regularity of the arbitration proceeding. Whether the arbitrator had exceeded her authority under the collective-bargaining agreement was an issue that was amply reviewable from the record of all exhibits filed and from the arbitrator's factual findings and reasoning in her 47–page decision and award.

### Just Cause

{¶ 20} An arbitrator makes two determinations in deciding whether an employer has disciplined and discharged an employee for just cause: " '(1) whether a cause for discipline exists and (2) whether the amount of discipline was proper under the circumstances.' " *Bd. of Trustees of Miami Twp. v. Fraternal Order of Police, Ohio Labor Council, Inc.* (1998), 81 Ohio St.3d 269, 271–272, 690 N.E.2d 1262, quoting Schoonhoven, Fairweather's Practice and Procedure in Labor Arbitration (3d Ed.1991).

{¶ 21} We reject the city's contention that under its retention of managerial rights in Article II, and consistent with R.C. 4117.08(C), the arbitrator was limited to making only a "just cause" determination. Absent language in a collective-bargaining agreement that restricts the arbitrator's power to review,

if the arbitrator determines that there was just cause to discipline an employee, the arbitrator is not required to defer to the employer as to the type of discipline imposed. See *Bd. of Trustees of Miami Twp.* at 271–272, 690 N.E.2d 1262. "An arbitrator has broad authority to fashion a remedy, even if the remedy contemplated is not explicitly mentioned in the labor agreement." *Queen City Lodge No. 69, Fraternal Order of Police, Hamilton Cty., Ohio, Inc.*, 63 Ohio St.3d at 406, 588 N.E.2d 802, citing *General Tel. Co. of Ohio v. Communications Workers of America, AFL–CIO* (C.A.6, 1981), 648 F.2d 452, 456–457, and *United Steelworkers v. Ent. Wheel* (1960), 363 U.S. 593, 597, 80 S.Ct. 1358, 4 L.Ed.2d 1424.

{¶ 22} Here, the parties' collective-bargaining agreement did not define "just cause" and included no language that restricted the arbitrator's power to review the type of discipline imposed. The only restriction that did appear was in Step Six, Section 3, Article III, which stated that the arbitrator was to have no power "that will add to, subtract from, or alter, change, or modify the terms of this agreement and his/her power shall be limited *to interpretation or application* of the express terms of this agreement." (Emphasis added.) Absent explicit instruction from the collective-bargaining agreement, the effect of the parties' agreement was to authorize the arbitrator to review both just cause for the discharge and the appropriateness of the discipline. See *Bd. of Trustees of Miami Twp.*, 81 Ohio St.3d at 272, 690 N.E.2d 1262. Therefore, the arbitrator's finding that three of the six charges and specifications were sustained by the evidence did not mean that discharge was automatic.

{¶ 23} The city manager ordered Caton's dismissal for "failure of good behavior and neglect of duty" pursuant to Rule 13.01 of the Rules Manual "[b]ased upon the severity of all of the sustained charges, as well as the cumulative effect of the six (6) sustained charges * * *." Of the three specifications and charges sustained by the arbitrator, two were for failure to "seek medical aid or provide first aid" because Caton knew that Owensby was "bruised and bleeding" and that force had been used against him. The third charge sustained by the arbitrator related to Caton's failure to immediately report the use of force, although the arbitrator found by way of mitigation that Caton was the only officer to call a supervisor due to the use of Mace. The city does not contend, and the arbitrator made no finding that suggested, that Caton's conduct caused or contributed to Owensby's death.

{¶ 24} In its brief, the city does not contest the arbitrator's finding that the evidence failed to clearly and convincingly demonstrate that Caton's conduct violated the rules cited in the specifications in charges II, III, and IV. The city contends, however, that the arbitrator went beyond the collective-bargaining agreement when as "arbitral precedent" she relied on "the Matrix," the table of

discipline in Section 15 of the Rules Manual, in determining that charges II, V, and VI did not amount to just cause for discharge.

### Rules Extraneous to the Agreement Permissible in Disciplinary Cases

{¶ 25} It is well settled that an arbitrator may not apply rules extraneous to the collective-bargaining agreement if those rules were not bargained for and are contrary to the plain language of the agreement. See *Internatl. Assn. of Firefighters, Local 67 v. Columbus,* 95 Ohio St.3d 101, 104, 766 N.E.2d 139. Because the Rules Manual and the Matrix were not mentioned in the collective-bargaining agreement, the city contends, the arbitrator improperly employed them to redefine the collective-bargaining agreement and thus exceeded the scope of her authority. See the Officer Spellen decision, 2005-Ohio-1560, 2005 WL 736667, ¶ 30.

{¶ 26} The city's reliance on *Internatl. Assn. of Firefighters* is misplaced. In that case, the arbitrator was charged with interpreting a contract provision relating to paid injury leave and the meaning of the term "disabilities." The arbitrator interpreted "disabilities" in a manner that was contrary both to the ordinary definition of that term and to the definition provided in another section of the agreement. See 95 Ohio St.3d at 102–103, 766 N.E.2d 139. In the interpretation of terms defined in a collective-bargaining agreement, the Supreme Court held that "[a]n arbitrator is confined to interpreting the provisions of a [collective-bargaining agreement] as written and to construe the terms used in the agreement according to their plain and ordinary meaning." Id. at 103, 766 N.E.2d 139. Thus, the Supreme Court held that an arbitrator cannot "apply extraneous rules to the agreement, where those rules were not bargained for and are contrary to the plain terms of the agreement itself." Id.

{¶ 27} Here the city contends that this holding, reached in a contract-interpretation case, applies equally to disciplinary-review cases. It urges us to conclude, as we did in the Officer Spellen decision, that an arbitrator exceeds his or her authority if the arbitrator "relie[s] on a source outside the agreement." 2005-Ohio-1560, 2005 WL 736667 at ¶ 30. Unlike in *Internatl. Assn. of Firefighters,* however, the award in Caton's disciplinary arbitration interpreted a collective-bargaining agreement that was silent as to the definition of "just cause" and did not restrict the type of discipline that the parties submitted to the arbitrator for determination.

{¶ 28} The no-extraneous-source rule would lead to ludicrous results in disciplinary-arbitration cases because an arbitrator could never compare the severity of discipline in similar offenses. This result would also conflict with the Supreme Court's analysis in *Bd. of Trustees of Miami Twp.,* 81 Ohio St.3d at 272, 690 N.E.2d 1262, which requires, in disciplinary cases, that the arbitrator "determine

* * * [whether] the commission of the misconduct, offense or dereliction of duty, *upon which the discipline administered was grounded,* [has] been adequately established by the proof; and * * * if proven or admitted, the reasonableness of the disciplinary penalty imposed in *the light of the nature, character and gravity* thereof." (Emphasis added.) An arbitrator could never determine whether an offense had been committed or assess its reasonableness without reference to the department's rules manual and other similar disciplinary documents, matters all extraneous to the agreement.

{¶ 29} We note that in light of the *Miami Twp.* standard, the city's argument that the arbitrator could not employ the Matrix seems disingenuous, since the city maintains that the arbitrator should have deferred to the grounds for dismissal unilaterally selected by the city—from Section 13.01 of the Rules Manual. Moreover, at the arbitration hearing the city itself moved the Rules Manual into evidence as its exhibit 13, thus placing the manual before the arbitrator.

{¶ 30} We thus distinguish this case from the Officer Spellen decision, which we limit to its own unique facts and to the issue of whether a police officer's perjured in-court testimony constituted just cause.

{¶ 31} In the Officer Spellen decision, the arbitrator also stated that the award was based *solely* on the table of punishments in the Matrix, to the exclusion of other factors. 2005-Ohio-1560, 2005 WL 736667 at ¶ 25. Here, the arbitrator considered a number of other factors such as "arbitral consistency" with regard to Caton's discipline. Caton's arbitrator found "controlling" other arbitrators' awards that relied on the Matrix, including the award in the Officer Spellen decision. In modifying Caton's dismissal and imposing a 40-hour suspension, however, the arbitrator specified that "[b]ased upon the discipline policy in effect and routinely applied in the year 2000 and based upon the evidence pertaining to the validity of the charges in specifications II, V, and VI," it was "unjust" to apply the city's policy, amended after November 7, 2000, retroactively.

{¶ 32} Although the remedy the arbitrator selected was not explicitly mentioned in the collective-bargaining agreement, absent an express restriction, the parties, by the terms of their agreement, gave the arbitrator power to modify the dismissal and to bring Caton's discipline in line with the 24- to 40-hour suspensions for the same charges received respectively by Officers Lawson, Brazile, Hunter, and Sellers. See *Bd. of Trustees of Miami Twp.*, 81 Ohio St.3d at 273, 690 N.E.2d 1262.

## Conclusion

{¶ 33} Whether we would have ruled differently than the arbitrator is immaterial. A reviewing court cannot substitute its judgment for the arbitrator's. See *Princeton City School Dist. Bd. of Edn.*, 134 Ohio App.3d at 333, 731

N.E.2d 186. An award will not be easily overturned or modified. Only when the arbitrator has overstepped the bounds of the authority conferred by the parties may a reviewing court vacate an award. See *Bd. of Trustees of Miami Twp.*, 81 Ohio St.3d at 273, 690 N.E.2d 1262, quoting *Queen City Lodge*, 63 Ohio St.3d at 406–407, 588 N.E.2d 802.

{¶ 34} We hold that the arbitrator's award in this case drew its essence from the collective-bargaining agreement and that there was a rational nexus between the agreement and the award because (1) the arbitrator determined that three charges against Caton were not sustained by the evidence when the city manager's stated reason for dismissal was based on the "cumulative effect of all six (6) sustained charges," (2) the arbitrator referred to "arbitral consistency" by considering the discipline administered in other arbitrations and citing the suspensions of five other officers ranging from 24 to 40 hours for the same or similar charges related to Owensby's in-custody death, and (3) the arbitrator found that the failure of the specifications to cite Rule 13.01 as the basis for the Caton's dismissal had deprived him of the opportunity to discuss or to defend against the charges at the predisciplinary hearing in which Raabe had recommended a suspension.

{¶ 35} Because the arbitrator's award modifying Caton's dismissal drew its essence from the collective-bargaining agreement and was not unlawful, arbitrary, or capricious, we reverse the judgment of the common pleas court and order that the arbitrator's award be reinstated.

Judgment accordingly.

DOAN, P.J., and HILDEBRANDT, J., concur.